Lisa FREEMAN, Plaintiff,

v.

CITY OF HACKENSACK, City of Paramus, "John" Smirles; "John" Hansen; Regent Care Center; Jeanne Monnecka; and Lisa Gapski, Defendants.

No. CIV.A.00–4882.

United States District Court,
D. New Jersey.

April 23, 2002.

Ambrose Wotorson, Brooklyn, NY, Jesse Wilkins, Preston & Wilkins, South Orange, NJ, for Plaintiff.

John L. Molinelli, Herten, Burstein, Sheridan, Cevasco, Bottinelli & Litt, Hackensack, NJ, for Defendants.

## OPINION

WOLIN, District Judge.

This matter comes before the Court on defendant City of Hackensack's and defendant Frank Hansen's motion for summary judgment. This matter was decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, defendants' motion will be granted.

## BACKGROUND

Plaintiff, an African–American female, was an administrative assistant at Regent Care Center ("Regent") in 1998. On September 18, 1998, plaintiff's colleague, Lisa Gapski, discovered that her wallet was missing when she attempted to make a purchase. Ms. Gapski was the Business Office Manager at Regent. Ms. Gapski's credit card was used that afternoon at several stores at the Garden State Mall. Ms. Gapski called the places where her card had been fraudulently used to make purchases to get a description of the people who had used her card. She spoke to Bill Perog, manager of the Finish Line, an athletic shoe store. He told Ms. Gapski that the purchasers were "two African–American women; one tall and one a little bit shorter and a little hefty." He said one of the women had a very dark complexion. Gapski dep. at 10. The manager at another store told her that one woman wore a headband. These descriptions, in conjunction with the people who had access to her office and the subsequent demeanor of plaintiff, made Ms. Gapski suspect that plaintiff had taken her wallet. Ms. Gapski communicated this to Jean Monnecka, a manager at Regent, as well as Deborah Hollander, Regent's acting administrator.

On September 19, 1998, defendant Hansen, a Hackensack detective, took Ms. Gapski's report.[1]

On October 5, 1998, defendant Hansen asked Ms. Monnecka for photos of plaintiff and another black female employee, Kim Featherstone, whom police also suspected of being involved in the theft. Ms. Mon-

---

[1] The Hackensack police were investigating the crime as the wallet had been stolen in Hackensack. The purchases, however, had been made in Paramus and as a result the Paramus police also became involved.

necka provided defendant Hansen with copies of drivers license pictures of the two women which she got from their employment files. Defendant Hansen did not request photos of any other employees and Ms. Monnecka provided none.

Defendant Hansen took these photos to the stores where the fraudulent purchases had been made. A male employee at the Finish Lane stated that he could not be sure but he thought the photos look similar to the suspects. The employees at Gap Kids, where another purchase was made, were not working at the time Ms. Gapski's credit card was used and could not identify the people in the photos at all.

Defendant Hansen interviewed several Regent employees, including plaintiff, in October, 1998. Defendant Hansen told plaintiff that there were videotapes and identifications of her, and that she had the opportunity to turn herself. According to defendant Hansen, these statements were an "investigative tool." (Hansen dep., 67:14–15) Plaintiff told him, "If you have so much evidence, why don't you arrest me now?" (Freeman dep., 90:15–16) There was a loud confrontation between the two as plaintiff left the interview.

According to plaintiff, despite the fact that he apparently realized that he had no useful identification, defendant Hansen told Ms. Monnecka that mall employees had identified plaintiff as the person who used Ms. Gapski's credit card. Based on this information, Ms. Monnecka decided to suspend plaintiff. Based on this, plaintiff's behavior toward Ms. Gapski after the theft, and plaintiff's confrontation with the officers who questioned her, Ms. Monnecka terminated plaintiff. (Monnecka dep., 13:21–25, 14:1–13)

No charges were ever brought against plaintiff by either the Hackensack police, on the wallet theft charge, or by the Para-mus police on the credit card fraud charges.

**Plaintiff's Claims**

Only counts one and two of plaintiff's three-count complaint are at issue here.

In the first count, plaintiff alleges that defendants violated her constitutional rights under the Fourth, Fifth and Fourteenth Amendments as secured by § 1983 and § 1985 by showing only two photographs to the mall employees.

In the second count, plaintiff alleges that defendants violated her constitutional rights under the Fourth, Fifth and Fourteenth Amendments as secured by § 1983 and § 1985 when they falsely informed Ms. Monnecka that plaintiff had been identified. Plaintiff claims that these actions by defendant Hansen deprived her of due process.

 The Court finds no basis for plaintiff's Fourth Amendment claim, as the Fourth Amendment protects against unreasonable searches and arrests. Plaintiff was never searched or arrested, and therefore the Court can discern no application of this Constitutional provision. Plaintiff's Fourth Amendment claims will therefore be dismissed.

In her response to defendants' motion for summary judgment, plaintiff concedes that there is no evidence to support her claims against the City of Hackensack. Plaintiff's claims against the City of Hackensack will therefore be dismissed.

The Court will analyze the contentions of the parties as they relate to defendant Hansen alone.

## DISCUSSION

### Standard for Summary Judgment

Summary judgement is appropriate only if all the probative materials of the record "show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Hersh v. Allen Prods. Co. Inc.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The court must resolve all reasonable doubts in favor of the nonmoving party when determining whether any genuine issues of material fact exist. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983). If there is "disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners*, 676 F.2d 81, 84 (3d Cir. 1982).

**The Photo Lineup**

Plaintiff contends that she was denied due process as guaranteed by the Fifth and Fourteenth Amendments when defendant Hansen used only two photographs in his attempts to elicit an identification of the women who used Ms. Gapski's credit card.

■ Both the Fifth and Fourteenth Amendments protect citizens from the deprivation of "life, liberty or property, without due process of law." In order to establish a claim of constitutional due process, plaintiff must establish three elements: 1) the defendant must deprive the plaintiff of a protectable interest in life, liberty or property; 2) that deprivation must be the result of some government action; 3) the deprivation must be without due process. *Downey v. Coalition Against Rape and Abuse*, 143 F.Supp.2d, 423, 441 (D.N.J.2001).

■ While it may be that the use of only two photographs for identification purposes is unduly suggestive, the plaintiff has not alleged that she was deprived of any protectable interest by defendant Hansen's use of this procedure.

It is undisputed that defendant Hansen never obtained a proper identification from witnesses.[2] He knew that the statement of a single employee who was unsure but thought the photographs possibly identified the women was insufficient. (Hansen dep. 43:18–25) Defendant Hansen told Detective Smirles in Paramus that Hansen had been unable to secure a useful identification. (Hansen dep. at 53: 14–16) As defendant Hansen noted in the case file in February, 1999, there was "no known suspect at this time." (*Id.* at 70: 13) The case was never officially closed and no one was ever arrested or prosecuted for the fraud.

As a result, the faulty photo lineup did not cause harm to any "protectable interest" of plaintiff's.

Plaintiff attempts to claim that the faulty identification resulted in her termination from Regent. As she states in her brief, a reasonable juror could find that "but for the Constitutionally [ ]impermissi-

---

**2.** Plaintiff contends that this is a disputed fact, because "as according to Gapski, Hansen told her that a store employee positively identified plaintiff as one of the thieves." (P.'s br. at 9) This statement erroneously conflates two issues. Hansen stated repeatedly at his deposition that he received no identification of the suspects. Plaintiff has offered no evidence demonstrating that the mall employees did identify plaintiff as a suspect. Indeed, such an assertion on plaintiff's part would be perverse.

In fact, the disputed fact is what defendant Hansen *told* Regent employees about the identification, not whether the mall employees identified plaintiff. Defendant Hansen claims that he never told anyone that there had been a positive identification, while plaintiff claims that, in fact, he told at least two Regent employees, Ms. Monnecka and Ms. Gapski, that plaintiff had been identified, which resulted in plaintiff's termination. Whether this disputed issue of fact is material will be addressed in the following section.

ble identification procedure employed herein, plaintiff would not have been terminated." P.'s Br. at 16. But this is not the case.

Defendant's Hansen's use of two photographs when attempting to get an identification resulted in nothing. There was no identification, as he repeatedly admitted, and no arrest or prosecution.

Despite the fact that he was unable to secure a valid identification, plaintiff claims, defendant Hansen told Ms. Monnecka that there had been an identification. It was this erroneous information—not the identification procedure itself—that contributed to the loss of plaintiff's job.

**Plaintiff's Termination**

Plaintiff alleges that defendant Hansen deprived plaintiff of her due process rights by telling Ms. Monnecka that plaintiff had been identified by store employees, which contributed to Ms. Monnecka's decision to terminate plaintiff. For purposes of this motion, the Court assumes that defendant Hansen did indeed communicate this erroneous information to Regent administrative staff.

It bears repeating that plaintiff needs to establish three elements for a due process violation: 1) the defendant must deprive the plaintiff of a protectable interest in life, liberty or property; 2) that deprivation must be the result of some government action; 3) the deprivation must be without due process. *Downey,* 143 F.Supp.2d at 441.

**1. Protected Interest Requirement**

An individual has due process rights to interests secured by statute and the Constitution. Here, plaintiff's purported interest is in her continued employment. In this case, the Court concludes that plaintiff did not have a constitutionally protected interest in continued employment at Regent.

■■■ While it is well established that an individual may have a protected property interest in continued employment, a person must "have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, but by "an independent source such as state law." *Id.*

■■■ In New Jersey, the employer of an at-will employee has the right to dismiss the employee "for cause or for no cause at all." *Shebar v. Sanyo Business Systems Corp.,* 111 N.J. 276, 285, 544 A.2d 377 (1988). Here, there is no allegation that plaintiff was anything other than an at-will employee. Because she had no employment contract, plaintiff "had no reasonable expectation under New Jersey law of continued employment" with Regent. *Downey v. Coalition Against Rape and Abuse, Inc.,* 143 F.Supp.2d 423, 442 (D.N.J.2001).

■■■ As a result, plaintiff has alleged no property interest to which due process rights attach.[3]

**3.** To the extent that plaintiff alleges she has been deprived of her liberty interests, *see Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the Court refers to its conclusion below that Regent's dismissal of plaintiff cannot be considered state action, and therefore plaintiff was not entitled to a hearing despite the fact that the reasons for plaintiff's dismissal were based on concerns of "dishonesty, or immorality." *Id.* at 573, 92 S.Ct. 2701.

## 2. State Action Requirement

Plaintiff's ability to allege due process violations "against state actors in federal court under the rubric of § 1983, springs from the Fourteenth Amendment, which protects only against wrongful state action." *Downey,* 143 F.Supp.2d at 437. Therefore, here, where the plaintiff "seeks to hold public officials liable for the actions of a private defendant," the Court must determine if Regent's termination of plaintiff has a sufficient nexus with the state such that it can be considered state action. *Id.*

Although the Supreme Court has stressed that there is a "range of circumstances that could point toward the State behind an individual face," it has identified several instances in which the conduct of a private defendant may be considered state action. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 930, 148 L.Ed.2d 807 (2001). A challenged activity may be state action when it results from the state's exercise of coercive power or when the state provides "significant encouragement, either overt or covert." *Id.* at 296, 121 S.Ct. 924. (citations and internal quotation marks omitted). In addition, the Court has held that a nominally private entity may be considered a state actor when it operates as a willful participant in joint activity with the State or its agents; when it functions as a state actor or is controlled by an agency of the state; when it has been delegated a public function by the state; when it is entwined with governmental policies; or when the government is entwined with its management or control. *See id.*

The only categories that could possibly apply to plaintiff's case are coercion and encouragement.

As the Supreme Court has stated, "a State normally can be held responsible for a private decision ... when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). This is not the case here.

Defendant's false assertion to Ms. Monnecka does not amount to coercion or encouragement such that the decision to terminate plaintiff can be considered "that of the state." Coercion may be found where the state has threatened the private entity with "loss of grant money, loss of revenue-producing referrals, and denial of certain permits." *Downey,* 143 F.Supp.2d at 439. Here, no such pressure was exerted on Regent to terminate plaintiff. Defendant Hansen did not encourage Regent to terminate plaintiff, and expressed no opinion whatsoever on her continued employment. Regent was free to respond to defendant Hansen's assertions any way it chose to.

The Court finds it telling that Ms. Monnecka did not base her decision to terminate plaintiff on the statement of defendant Hansen alone, but also on the suspicions of her employee, Ms. Gapski, and her own observation of plaintiff's conduct after the interview. Clearly, Ms. Monnecka's decision cannot "be fairly treated as that of the state itself." *Brentwood Academy,* 531 U.S. at 295, 121 S.Ct. 924, *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

For these reasons, even assuming plaintiff's allegations to be true, she cannot establish that defendant Hansen violated her due process rights when he mislead Regent's administrative staff about the identification. Plaintiff's 1983 claims

against defendant Hansen will therefore be dismissed.

### 1985(3) Claims

■ Plaintiff also asserts the she has been deprived of her rights as articulated in counts one and two through a conspiracy of the defendants. In order to make out a claim under § 1985(3), plaintiff must allege that 1) two or more persons conspired to deprive plaintiff of the equal protection of the law; 2) one or more of the conspirators caused to be performed any overt act in furtherance of the conspiracy; and 3) that overt act injures the plaintiff in his person or property. *See Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir.2001).

Unlike § 1983, § 1985(3) does include a requirement that the individuals act "under color of state law," and protects individuals from conspiracies of private as well as public actors.

### 1. Requirements of a Conspiracy

■ "Proof of a conspiracy entails two essential elements: (1) two or more legally independent actors who (2) engage in concerted action." *Lucas Industries, Inc. v. Kendiesel, Inc.*, 1995 WL 350050, at *6 (D.N.J.1995)(Wolin, J.). There must be some evidence that the two acted "with a common purpose." *Strickland v. University of Scranton*, 700 A.2d 979, 988 (Pa.Super.1997), cited with approval in *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir.2000). Plaintiff has put forth no evidence, direct or circumstantial, that there was any collaboration by the defendants. Indeed, the evidence indicates that any impropriety was defendant Hansen's alone.

### 2. Equal Protection Violation

■ Third Circuit law requires that a " § 1985(3) defendant have discriminated on the basis of relatively immutable, highly identifiable, and discrete group identification, such as race, gender, disabled status, or perhaps religion." *Sunkett v. Misci*, 183 F.Supp.2d 691, 706 (D.N.J.2002). In this case, plaintiff apparently contends that defendants conspired to deprive her of her job for reasons of racial animosity. Plaintiff has adduced no evidence, circumstantial or direct, of such motive. Admittedly, plaintiff at some point became a focus of the investigation into the theft of Gapski's wallet. However, this was based on a combination of factors. The description given by the store employees combined with the people who had access to Ms. Gapski's office could reasonably, and not discriminatorily, create such suspicion, regardless of plaintiff's actual innocence. As long as a person is not targeted purely because of his race (*i.e.*, if plaintiff were targeted absent any description or other evidence), it is permissible for law enforcement to consider race as one of a suspect's identifying characteristics. *See Brown v. City of Oneonta*, 221 F.3d 329, 333–334 (2d Cir.2000), *rehearing and rehearing en banc denied*, 235 F.3d 769 (2000), *cert. denied*, —— U.S. ——, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001) ("We hold that under the circumstances of this case, where law enforcement officials possessed a description of a criminal suspect, even though that description consisted primarily of the suspect's race and gender, absent other evidence of discriminatory racial animus, they could act on the basis of that description without violating the Equal Protection Clause."). *See also United States v. Cabrera*, 222 F.3d 590, 597 (9th Cir.2000) (stating "that in some instances, such as eyewitness identification, a defendant's race or ethnicity is relevant and not prejudicial"); *United States v. Doe*, 903 F.2d 16, 25 (D.C.Cir.1990) ("An unembellished reference to evidence of race simply as a factor bolstering an eyewitness identifica-

tion of a culprit, for example, poses no threat to purity of the trial.").

Because plaintiff has failed to offer any evidence from which a jury could determine that defendants conspired to deprive her of the equal protection of the law, plaintiff's claims under § 1985 claims will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be granted in its entirety. An appropriate order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 23rd day of April, 2002

ORDERED that defendant's motion for summary judgment is granted in its entirety.